Nott, J.,
delivered the opinion of the court:
There is a class of persons in the Navy recognized by the statutes, but whose positions are nonenumerated and undefined. They are termed “petty officers.” When we turn to the statutes which concern the Army we can tell who noncom-missioned officers are — sergeant-majors, quartermaster-sergeants, sergeants, corporals, etc. They are designated and their pay is regulated by law. In the Navy there are also noncommissioned officers who are likewise designated and their pay fixed, viz, warrant officers — boatswains, gunners, carpenters, and sailmakers. At this point the intimate knowledge of the legislative power with the personnel of the Navy seems to stop. The nonenumerated, nondefined “petty officers,” of whom there are now, according to the argument of defendants’ counsel, no less than thirty-eight grades in the Navy, are remitted to a kind of naval common law, and the responsibility of. providing for their pay is thrown upon the President. (Eev. Stat., § 1569.)
The only question presented by the present case is whether the claimant does or does not belong to this undefined class. It is an anomalous case, for the claimant is contending that he belongs to the lower grade of petty officers, while the defendants are contending that he is temporarily appointed to the duties of a warrant officer, and hence within the exception in Eevised Statutes, section 1410. Ordinarily higher pay goes with higher grade, but here the anomaly is that higher pay will depend upon lower grade. If the claimant is a petty officer lie is entitled to a naval ration; if a warrant officer, he is not.
The reason of this anomaly is that when at sea both warrant and petty officers receive rations; when on shore duty petty officers, inasmuch as they receive materially less pay than warrant officers, are allowed a ration a day, which warrant officers are not. Hence it is that the claimant’s right to recover the commutation value of his rations depends upon his being in the lower grade — upon his being nothing more than a petty officer.
*111 He was a mate in the Navy, attached to and serving on the receiving ship Vermont from March 20,1888, to August 14,1891, and during this service he was not allowed a ration, nor commutation therefor. The counsel for the defendants, with commendable industry and painstaking care, has traced the history of the position, or office, of mate through a labyrinth of statutes and regulations, extending through a period of more than a hundred years. His argument is understood to be this:
Masters’ mates were originally petty officers appointed by the captains of their ships. In 1813 a statute provided, with reference to certain new ships, that masters’ mates should be warrant officers and be appointed by the President. In 1835 a statute refers to these “masters’ mates” as “warranted masters’ mates;” that is to say, apparently recognizes two classes of masters’ mates as then existing in the Navy, those who were rated and those who were warranted. In 1842 another statute distinguishes boatswains, gunners, carpenters, and sailmakers as “forward warrant officers;” that is to say, apparently recognizes other warrant officers than boatswains, gunners, carpenters, and sailmakers.
In 1843 the Navy Department determined to drop the office of master’s mate, or warranted master’s mate, and in 1847 a regulation forbade appointments by commanding officers without the special sanction of the Secretary of the Navy; that is to say, the President ceased to make appointments of warranted masters’ mates, and the Navy Regulations forbade commanding officers to make temporary appointments of masters’ mates. But the grade was not abolished and old sailors who had been previously appointed continued to hold the office and get the pay.
This continued to be the condition of affairs until the outbreak of the civil war, when the Secretary of the Navy appointed a great number in the volunteer naval service, terming them “acting masters’ mates.” His action was ratified by the Act 24th July, 1861 (12 Stat. L., 272, sec. 2), and he was authorized to make future similar appointments. The Act 16th July, 1862 (12 Stat. L., 587, sec. 20), provided that the pay of all officers so appointed should be the pay of those in the Regular Navy, although there were then none in the Regular Navy.
In 1865 the Act 3d March, 1865 (13 Stat. L., 539), changed the title of theoffice of “master’s mate”to “mate,”andprovided *112 tliat they should, be rated under authority of the Secretary of the Navy; and in 1870 the Act 15th July, 1870 (16 Stat. L., 330, sec. 3), recognized them in the Regular Navy by prescribing their rate of pay for sea duty, shore duty, and when on leave or waiting orders. Through all this period, it is contended by the counsel for the defendants, acting masters’ mates and mates were temporarily appointed to the duties of warrant officers and were so recognized and held to be by the Treasury and Navy Departments.
It is manifest, therefore, that there was an extraordinary medley of statutory provisions relating to the naval office of mate when Congress undertook the work of codifying the laws by the enactment of the Revised Statutes. There had been, and perhaps still were, two kinds of mates or masters’ mates authorized by statutes — those who were appointed by commanding officers and those who were appointed by the President ; and apparently both statutes were in force and unrepealed. There had also been two kinds of warrant officers iii the Navy— “warrant officers’’and “forward warrant officers.” There were statutes which recognized “warranted masters’ mates” and statutes which recognized “forward warrant officers,” though no such positions had been defined by -statute. One act of Congress authorized appointments to be made by the President and another by the Secretary of the Navy. For twenty years the Navy Department had practically excluded the office of master’s mate from the naval service, though no statute required or authorized its exclusion. In a word, there were ¡‘masters’ mates,” “ warranted masters’ mates,” “warrant officers,” “forward warrant officers,” “acting masters’ mates,”' and “mates,” with the power of appointment given by unre-pealed statutes to commanding officers, to the President, and to the Secretary of the Navy.
The Revised Statutes undoubtedly cleared and changed the law, and it is believed that all of the provisions bearing upon the present question are to be found in the following sections:
“Sec. 1405. The President may appoint for the vessels in actual service as many boatswains, gunners, sailmakers, and carpenters as may, in his opinion, be necessary and proper.
“ Sec. 1406. Boatswains, gunners, carpenters, and sailmakers shall be known and shall be entered upon the Naval Register as “ warrant officers in the naval service of the United States.”
*113 “Sec. 1408. Mates may be rated, under authority of the Secretary of the Navy, from seamen and ordinary seamen who have enlisted in the naval service for not less than two years.
“Sec. 1400. The rating of an enlisted man as a mate, or his appointment as a warrant officer, shall not discharge him from his enlistment.
“ Sec 1410. All officers not holding commissions or warrants, or who are not entitled to them, except such as are temporarily appointed to the duties of a commissioned or warrant officer, and except secretaries and clerks, shall be deemed petty officers, and shall be entitled to obedience, in the execution of their offices, from persons of inferior ratings.”
“Sec. 1569. The pay to be allowed to petty officers, excepting mates, and the pay aucl bounty upon enlistment of seamen, ordinary seamen, firemen, and coal heavers in the naval service shall be fixed by the President.”
“Sec. 1579, No person not actually attached to and doing duty on board a seagoing vessel, except the petty officers, seamen, and ordinary seamen attached to receiving ships or to the ordinary of a navy-yard, and midshipmen, shall be allowed a ration.”
In these provisions of the Revised Statutes a number of things become plain. (1) Boatswains, gunners, carpenters, and sail-makers are the only officials designated as “warrant officers in the naval service of the United States.” (2) Warrant officers are “appointed” by the President without restriction; mates are “rated,” not by, but under authority of the Secretary of the Navy, and the rating is restricted to those who have “enlisted for not less than two years.” (3) All officers not holding commissions or warrants — that is to say, all officers other than commissioned officers or warrant officers — “shall be deemed petty officers.” • A mate is not a commissioned officer or a warrant officer or a secretary or a clerk; neither is he a person “temporarily appointed” to the duties of a commissioned officer or to the duties of a warrant officer. (4) Section 1569 is, therefore, perfectly consistent with the preceding provisions of the Revised Statutes when it impliedly classes mates with petty officers by saying: “The pay to be allowed to petty officers, excepting mates,” “shall be fixed by the President.”
The reason why the statute uses the words “ excepting mates ” is because their pay is fixed by section 1556. If the statute did not contain this clause — if it did not expressly make mates an exception to the general provision that the pay to be allowed *114 to petty officers shall by fixed by the President — there would be a strong statutory implication that a mate, whose salary is fixed by law, is not a petty officer. The insertion of that clause is consequently a strong statutory implication that a maté is a petty officer, as all of these provisions of law are parts of one statute and were enacted at one time and received unusual scrutiny.
After the enactment of the Revised Statutes the subject seems to have obtained little attention in the Navy and Treasury Departments. In the latter the Revised Statutes were not deemed to have effected any change in the law, and mates continued to be treated as the lineal descendants of “warranted masters’ mates,” and consequently as warrant officers. At last the Navy Department spoke definitively by the Navy Regulations, 1893, “mates are petty officers,” article 28. The subject belongs to the Navy Department, and the Navy Regulations are not the hasty utterance of transitory orders, but the well-considered act of the President himself for the guidance of the entire Navy — a work, in short, authorized by law and having-in the Navy the force of law.
The court would hesitate long in declaring a regulation of the Army or Navy to be void. In the present case the Regulations, 1893, most certainly have statutory provisions behind them which might well be construed by the President and Secretary of the Navy as they were construed. It is certainly a case where the interpretation of the statute by an Executive Department charged with its administration should not be disturbed.
The judgment of the court is that the claimant recover $372.60.